BARNARD, P. J., and PRATT, J., concurred in result.

Judgment affirmed, with costs.

---

THE TRUSTEES OF THE FREEHOLDERS AND COMMONALTY OF THE TOWN OF EAST HAMPTON, Plaintiff, *v.* JEREMIAH H. VAIL and Another, Defendants.

*Territory of the town of East Hampton — colonial grants — Fort Pond bay.*

The land under the water of Fort Pond bay on the northerly side of Long Island was not included in and did not pass by the use of the words "together with all havens, harbors, creeks," in the Nicholls patent of 1666, confirmed by the Dongan grant of 1686, to the freeholders and inhabitants of the town of East Hampton.

MOTION for a new trial on exceptions taken by the plaintiff on a trial at the Suffolk Circuit, and ordered, on the direction of a verdict for the defendants on the 25th day of October, 1892, to be heard in the first instance at the General Term.

*Wilmot M. Smith* and *Charles R. Street*, for the plaintiff.

*Thomas Young* and *T. M. Griffing*, for the defendants.

DYKMAN, J. :

This is an action of ejectment for the recovery of land under the water of Fort Pond bay on the northerly side of Long Island.

The plaintiffs claim title under a patent from Governor-General Richard Nicholls to John Mulford and others, for and on behalf of themselves and their associates, the freeholders and inhabitants of the town of East Hampton in 1666, and a confirmatory grant from Governor-General Thomas Dongan in 1686 to Captain Thomas James and others, freeholders and inhabitants of East Hampton.

The primary and paramount question is whether the premises were included in the patents, and that depends upon the language of the instruments in describing and bounding the same. The language is this : " All that tract of land which already hath beene or that hereafter shall bee purchased for and on the behalf of the said towne, whether from the natives (Indyan proprietors) or others within bounds and limitts hereafter sett forth and exprest, vizt.: That is to say their West bounds begining from the East limitts of the bounds of Soutpton (as they are now laid out and stak't according to agreement and consent) so to stretch East to a certaine Pond commonly callee the Fort Pond, which lyes within the old bounds of the lands belonging to the Muntauke Indyans, and from thence to go on still East to the utmost extent of the Island ; on the North they are bounded by the Bay and on the South by the sea or maine ocean. All which said tract of land within the bounds and limitts before mentioned, and all or any plantation thereupon, from hence forth are to belong and appertaine to the said towne, and bee within the jurisdiction thereof, together with all havens, harbors, creekes, quarryes, woodlands, meadowes, pastures, marshes, waters, lakes, rivers, ffishing, hawking, hunting, ffowling, and all other proffits, commodityes, emoluments, and hereditaments, to the said tract of land and pr'misses within the limitts and bounds aforementioned, described, belonging or in any wise appertaining."

Then follows the usual habendum clause.

The description of the premises in the confirmatory patent from Governor Dongan is substantially the same.

Fort Pond bay is not within the limits and bounds named in either patent, but the plaintiffs insist that it was included therein and conveyed thereby by the words " together with all havens, harbors, creeks," etc., but it must be remembered that those words are followed by the words " within the limitts and bounds aforementioned."

That clause is restrictive of all the subjects named, and, therefore, nothing is included in the patents unless it be within the limits and bounds specified therein.

The language is peculiar and the description is somewhat uncertain. The west bounds of the premises begin at the east limits of the town of Southampton. Then the language describes a single line stretching east to Fort pond, and from there still east to the utmost extent of the island, and there the line terminates. That line, therefore, includes nothing, but it is immediately followed by these words, "on the North they are bounded by the Bay and on the South by the sea or maine ocean." The premises described in the patent, therefore, are bounded on the west by Southampton, on the north by the bay and on the south by the Atlantic ocean.

What body of water is intended to be designated by the word "bay" as the northern boundary of the premises is not very apparent. It seems to apply only to the sound, as that is the body of water on the north, and the only water that extends along the whole of the north side. The word can scarcely apply to Fort Pond bay, for that only extends for a short distance.

Whatever it may designate, however, it carries the grant to the water only, and the water is the north boundary. In respect to Fort Pond bay, its south shore is the north bounds of the premises.

In respect to the contention of the plaintiffs, that nothing else can pass under the word "haven," the answer is that it is not essential that anything should so pass. There may have been no quarries, and if none then nothing passed by virtue of that word.

Much testimony was offered upon the trial to show that Fort Pond bay was a good harbor, but it is not so secured by the circumjacent land as to be entitled to that designation. Like every lee shore, it is a secure and quiet place for vessels when the wind blows from the land, but when the wind is from the sound there is no protection.

Upon careful consideration, we find no errors, and our conclusion is that the verdict was properly directed for the defendants, and the exceptions should be overruled and judgment entered upon the verdict for the defendants, with costs.

BARNARD, P. J., and PRATT, J., concurred.

Exceptions overruled and judgment for defendants on verdict.